**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL NO. 09-81-DLB-JGW-3**

**UNITED STATES OF AMERICA**                                       **PLAINTIFF**

**VS.**

**DANIEL J. DAVIS**                                                      **DEFENDANT**

**REPORT AND RECOMMENDATION**

On June 6, 2012 this matter came on for an evidentiary hearing on petition of the United States Probation Office that the defendant, DANIEL J. DAVIS, show cause why his supervised release should not be revoked. The defendant was present in Court and represented by Chris Jackson and the United States was present through Assistant United States Attorney Tony Bracke. The proceedings were recorded by official court reporter Joan Averdick and conducted pursuant to 18 U.S.C. § 3401(I). Oral argument was presented by counsel and the defendant admitted violating the terms of his supervised release as set out in the June 6, 2012 violation report of U.S.P.O. Stacey M. Suter.

After pleading guilty on April 20, 2010 to Conspiracy to Distribute and Possess with Intent to Distribute Oxycodone in violation of 21 U.S.C. § 846, Davis was sentenced to time served followed by a three year term of supervised release with the following conditions: 1) Participate in substance abuse treatment and submit to periodic drug and alcohol testing at the direction and discretion of the probation officer; 2) Participate in mental health treatment at the direction and discretion of the probation officer; 3) Obtain GED; 4) Refrain from obstructing or attempting to

1

obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing; 5) Notify the USPO immediately (i.e. within no later than 72 hours) if defendant receives any prescription for a medication containing a controlled substance during the period of supervised release. Defendant shall provide the USPO such documentation and verification as the USPO may reasonably request and in a form the USPO directs; and 6) Defendant must comply strictly with the orders of any physician or other prescribing source with respect to use of all prescription medications.

Davis began his term of supervised release on April 20, 2010, and now stands charged with the following five violations:

**VIOLATION #1:** **THE DEFENDANT SHALL NOT PURCHASE, POSSESS, USE, DISTRIBUTE, OR ADMINISTER ANY CONTROLLED SUBSTANCES OR ANY PARAPHERNALIA RELATED TO ANY CONTROLLED SUBSTANCES, EXCEPT AS PRESCRIBED BY A PHYSICIAN.**

On May 18, 2012 USPO Suter and SUSPO Heringer met Davis at his residence to conduct a home visit. When defendant was asked to produce a urine specimen, he was unable to do so indicating a need to drink water. In response to USPO Suter's inquiry about his medications, Davis replied that he used Xanax three days prior, Citalopram HBR, 40 mg on the date of the visit, and Percocet. Upon request he was unable to produce the medication bottles because he had used the last of the pills which were kept freely in cabinets, and for that reason no bottles were contained in the defendant's trash. After being warned that such medications must be kept in their proper containers, defendant became nervous but did produce an observed urine specimen. That specimen was positive for Opiates, Suboxone, Oxycodone, and Benzodiazepines. Lab reports were returned as positive for Oxycodone, negative for Benzodiazepines, and the result remains pending for Suboxone. After finding a note which read, "Bam, Don't forget bank withdrawal $ from sav act.

2

Can you borrow Suboxin from ladie need today", USPO Suter inquired about the note. Davis replied that it was written by his girlfriend and she had run out of her prescription. When asked if he had used Suboxone, Davis stated that he had used ½ of a tablet within the last few days.

In the course of an office visit on May 21, 2012, Davis was informed of the violations of his supervision including that he was short pills during the home visit on May 18. After defendant admitted that he had in fact used the pills, USPO Suter asked for his cell phone and defendant's agreement to search that phone. Davis returned to the probation office on May 24, 2012 with his cell phone, and a review of the phone text indicated that Davis had sold Suboxone to an individual by the name of Billy and also received Suboxone from him. Davis also received Percocet from a person named Randy and sold/received Percocet from an unknown individual. Those texts as set out in the violation report follow:

The last text received from Randy is as follows:

Sent from Randy to Mr. Davis on 5/18/12 at 6:27 PM, "I got two p 7.5s You want em."

The text received from the unknown party was as follows:

Sent from unknown party to Mr. Davis on 5/19/12 at 4:22 PM, "Anything."

Sent from unknown party to Mr. Davis on 5/20/12 at 4:01 PM, "P3s."

**VIOLATION #2:THE DEFENDANT SHALL NOTIFY IMMEDIATELY (i.e. WITHIN NO LATER THAN 72 HOURS) IF DEFENDANT RECEIVES ANY PRESCRIPTION FOR A MEDICATION CONTAINING A CONTROLLED SUBSTANCE DURING THE PERIOD OF SUPERVISED RELEASE. DEFENDANT SHALL PROVIDE THE USPO SUCH DOCUMENTATION AND VERIFICATION AS THE USPO MAY REASONABLY REQUEST AND IN A FORM THE USPO DIRECTS.**

A review of KASPER indicates that defendant received prescriptions containing a controlled substance on 2/4/12; 2/20/12, 2/28/12; 3/23/12; 3/26/12; 4/21/12; and 4/24/12. Davis did not notify his probation officer of these prescriptions. On March 27, 2012 USPO Suter met with Davis to discuss his March 12 doctor visit and the timing of that visit in relation to a phone call for him to report for a urine screen. Davis replied that he was very ill on that specific day. His probation officer admonished Davis of her suspicions since he responded to the hospital within two hours of being notified to report at the probation office for a urine screen, yet never informed his probation officer of his situation. He was further warned for not notifying the probation office regarding a medication from Dr. Suetholz in late February, 2012. In discussion with USPO Suter, Davis indicated that he no longer had Oxycodone or Endocet, and he was again admonished that there will be future pill counts and Davis should always request a non-narcotic given his substance abuse issues. Another KASPER review indicated Davis was given a prescription for Oxycodone on March 26, 2012 (120 pills) which he failed to mention during the March 27 office visit.

**VIOLATION #3: DEFENDANT MUST COMPLY STRICTLY WITH THE ORDERS OF ANY PHYSICIAN OR OTHER PRESCRIBING SOURCE WITH RESPECT TO USE OF ALL PRESCRIBED MEDICATIONS.**

As previously discussed, during the home visit on May 18, 2012 a urine specimen was collected which tested positive for multiple substances. Records indicate that Mr. Davis was prescribed Oxycodone/Acetaminophen (120 count/30 day supply) and Amphetamine/Dextroamphetamine (120 count/30 day supply) on April 24, 2012, as well as Alprazolam (90 count/30 day supply) on April 21, 2012. At the time of the home visit, he could not provide prescription bottles or loose pills and was essentially short 20 tablets of Oxycodone; 15 tablets of Amphetamine/Dextroamphetamine; and 6 tablets of Alprazolam. It should also be noted

4

that the dip test did not test positively for amphetamines.

**VIOLATION #4: THE DEFENDANT SHALL NOT COMMIT ANOTHER FEDERAL, STATE, OR LOCAL CRIME.**

As previously indicated in Violation #1, Davis admitted to using ½ tablet of Suboxone which was prescribed to his girlfriend. According to the probation office, use of Suboxone, (a Schedule III controlled substance) is a Class A misdemeanor under Kentucky law with a penalty of up to 12 months imprisonment and a $500 fine. Davis has also violated 21 U.S.C. § 844(a) (Simple Possession/Class E felony) because he possessed and used ½ tablet of Suboxone and was previously convicted of Conspiracy to Distribute and Possess with Intent to Distribute Oxycodone.

**VIOLATION #5: THE DEFENDANT SHALL COMPLETE HIS GED.**

On August 16, 2010 Mr. Davis was sent a formal letter from USPO Vonderhaar instructing him to enroll or complete GED classes by October 1, 2010. Although he began his term of supervised release on April 20, 2010 he has failed to obtain his GED to date and is not actively enrolled in GED classes.

The parties have reached an agreement as to the appropriate punishment for the above violations, and the Court being satisfied from discussion with defendant that he understands the nature of the five charges pending against him, has had ample opportunity to consult with counsel, and enters this agreement knowingly and voluntarily, accordingly;

**IT IS RECOMMENDED:**

1.      That the defendant be found to have violated the terms of his supervised release as set out above, and that the supervised release be REVOKED;

2.      That the defendant, DANIEL J. DAVIS, be sentenced to the custody of the Attorney General for a period of **NINE (9) MONTHS** with no supervised release to follow.

Particularized objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service of the same or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), aff'd, 474 U.S. 140 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55) (6th Cir. 1986). **If the defendant wishes to address the District Court prior to sentencing, the defendant must so notify the Court in writing within fourteen (14) days.** A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Rule 72(b), Fed.R.Civ.P.

This 7th day of June, 2012.

Signed By:

*J. Gregory Wehrman*

United States Magistrate Judge

6